UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

IDOLTHUS HUBBARD,

        Plaintiff,                Case No. 2:22-cv-223

v.                                      Honorable Maarten Vermaat

UNKNOWN BECK et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 4.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]however, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Ofstad and Hubble. The Court will also dismiss, for failure to state a claim, Plaintiff's claims for interference with his access to the courts, violations of his Eighth and Fourteenth Amendment rights, and conspiracy, and all official capacity claims. Plaintiff's claims for First Amendment retaliation against Defendants Mann, Beck, and Demers remain in the case.

## Discussion

**I.      Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred at the Alger Correctional Facility (LMF) in Munising, Alger

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

County, Michigan. Plaintiff sues Correctional Officers Unknown Beck, Unknown Demers, and Unknown Ofstad, as well as Sergeant Unknown Mann and Spruce Unit Resident Unit Manager Unknown Hubble.

This matter concerns alleged retaliation for an earlier civil lawsuit filed by Plaintiff against Defendant Mann and others, *Hubbard v. Mann et al.*, No. 2:21-cv-55. (*See* ECF No. 1, PageID.5–6; ECF No. 1-1, PageID.20.) Plaintiff claims that, on July 26, 2021, LMF Administration was notified of a settlement conference in *Hubbard v. Mann*. (ECF No. 1, PageID.11.) That same day, at around 6:00 p.m., Plaintiff observed Defendant Sergeant Mann speaking with Defendant Correctional Officers Beck and Demers at the Spruce Unit Officers desk. (*Id.*, PageID.8.) Upon completion of their conversation and shortly after Plaintiff had entered his prison cell, Defendants Beck and Demers approached Plaintiff's cell door. (*Id.*, PageID.8–9.) Defendant Beck said to Defendant Demers, "This is Hubbard," and ordered Plaintiff and his cellmate to step out of the cell for a shakedown; Defendant Beck did not first stop and pat down Plaintiff. (*Id.*, PageID.9.) Plaintiff and his cellmate obliged. (*Id.*) Approximately 15 to 20 minutes later, Defendants Beck and Demers emerged, carrying Plaintiff's duffle bag that held Plaintiff's legal papers and several COVID-19 face masks. (*Id.*) When Plaintiff inquired as to why Defendants Beck and Demers confiscated Plaintiff's duffle bag (containing legal materials) and face masks, Defendant Demers responded, "No, don't talk to me, don't ask me anything!" (*Id.*) Plaintiff directed the same question to Defendant Beck, who responded, "Because I wanted to!" (*Id.*) Plaintiff informed Defendant Beck that Plaintiff had been issued the duffle bag to carry his legal materials, but Defendant Beck ignored Plaintiff's explanation and told Plaintiff to leave the officers' desk. (*Id.*)

Immediately following Plaintiff's interaction with Defendants Beck and Demers, Plaintiff approached Corrections Officer Haukkala (not a party), who was aware that Plaintiff had been

4

issued the green duffle bag for purposes of carrying Plaintiff's legal materials, and "explained the whole situation." (*Id.*) Officer Haukkala picked up the duffle bag from the floor and handed it to Plaintiff, along with the COVID-19 face masks. (*Id.*)

Upon returning to his cell, Plaintiff saw that Defendants Beck and Demers had "completely trashed/destroyed [Plaintiff's] assigned prison cell by intentionally and willfully removing everything . . . from [Plaintiff's] assigned cell wall locker and thr[owing] everything on the floor." (*Id.*, PageID.10.) Plaintiff also saw that his papers, mail, and legal work had been thrown around the cell and his personal desk fan had been broken. (*Id.*)

When Plaintiff later saw Defendants Beck and Demers, Plaintiff asked them why they trashed Plaintiff's prison cell. (*Id.*) Defendant Demers responded, "Don't ask me nothing," while Defendant Beck replied with a grin, "I don't know what you're talking about." (*Id.*) When Plaintiff again asked Defendant Beck why Defendants Beck and Demers destroyed Plaintiff's property, Defendant Beck told Plaintiff to get away from the desk "before I write you a ticket for threatening behavior." (*Id.*)

Plaintiff then approached Defendant Ofstad while Defendant Ofstad was on the computer and asked if Defendant Ofstad could contact a sergeant, captain, or lieutenant so that Plaintiff could report the incident. (*Id.*) Defendant Ofstad refused, telling Plaintiff to "stop crying do damn much," and to "[d]eal with it and stop whining." (*Id.*)

The following day, after seeking assistance from non-party Corrections Officer Rochefort, Plaintiff spoke with Defendant Hubble and informed Defendant Hubble of the previous day's events. (*Id.*, PageID.11.) Defendant Hubble also refused to do anything about it, saying that Defendant Hubble would not take Plaintiff's word over that of a corrections officer. (*Id.*)

Plaintiff brings claims of First Amendment retaliation, "interference of Plaintiff's right to access the court," violation of Plaintiff's Fourteenth Amendment right to substantive due process, violation of Plaintiff's Eighth Amendment right to be free of cruel and unusual punishment, and conspiracy. (*Id.*, PageID.13–14.) He seeks compensatory and punitive damages, as well as declaratory relief against Defendants in both their individual and official capacities. (*Id.*, PageID.15–16.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     First Amendment Retaliation

Liberally construed, Plaintiff brings claims against all Defendants for First Amendment retaliation. (ECF No. 1, PageID.13.) Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

#### 1.     Defendants Mann, Beck, and Demers

Plaintiff alleges that Defendants Mann, Beck, and Demers each retaliated against Plaintiff for Plaintiff's filing of a civil lawsuit against Defendant Mann and others. He alleges that Defendant Mann, a sergeant, spoke with Defendants Beck and Demers, his subordinates, on the day that LMF administration received notice of an upcoming settlement conference and that,

7

immediately following that conversation, Defendants Beck and Demers trashed Plaintiff's cell, destroyed Plaintiff's personal property, and temporarily confiscated Plaintiff's legal papers. Plaintiff also claims that Defendant Beck threatened to issue Plaintiff a misconduct for threatening behavior in response to Plaintiff's verbal complaints regarding Defendant Beck's behavior. Taking these allegations as true, Plaintiff's First Amendment retaliation claims against Defendants Mann, Beck, and Demers cannot be dismissed on screening.

### 2.     Defendants Ostad and Hubble

In contrast, Plaintiff cannot state a retaliation claim against Defendants Ostad and Hubble. Plaintiff's complaint contains no facts from which the Court could infer that either Defendant Ofstad or Hubble was aware of Plaintiff's lawsuit against Defendant Mann. *See Thaddeus-X*, 175 F.3d at 387 (explaining that the defendant must have known about the protected activity in order for it to have motivated an alleged adverse action). And even if this Court were to consider Plaintiff's oral complaints to Defendants Ofstad and Hubble as the relevant protected activity, *see Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018), Plaintiff fails to demonstrate any adverse action by these Defendants.

Because vicarious liability is inapplicable, to state a claim under § 1983, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Liability in a § 1983 action cannot be premised upon passive behavior or an alleged failure to act; rather liability must be based upon active unconstitutional behavior. *See Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206–07 (6th Cir. 1998), *cert. denied*, 526 U.S. 1115 (1999). Accordingly, liability in a § 1983 action does not attach based upon allegations that a defendant simply denied a prisoner's grievance or failed to act in response thereto. *See Skinner v. Govorchin*, 463 F.3d 518, 525–26 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lee*

*v. Mich. Parole Board*, 2004 WL 1532563, at *2 (6th Cir., June 23, 2004) ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act upon information contained in a grievance."); *Alder v. Corr. Med. Servs.*, 2003 WL 22025373 at *2 (6th Cir., Aug. 27, 2003) ("The mere denial of a prisoner's grievance states no claim of constitutional dimension.").

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell*, 308 F.3d at 606 (emphasis in original).

At best, Plaintiff claims that Defendant Ofstad responded to Plaintiff's verbal complaints by telling Plaintiff to "stop crying so damn much" and to "[d]eal with it and stop whining," while Defendant Hubble told Plaintiff that Defendant Hubble would not take Plaintiff's word over that of a corrections officer. (ECF No. 1, PageID.10–12.) However, in *Thaddeus-X*, the Sixth Circuit recognized that some threats and deprivations are too minimal to constitute adverse action. Citing *Bart v. Telford*, 677 F.2d 622 (7th Cir. 1982), the *Thaddeus-X* court held that minor harassment is insufficient to constitute adverse action, because recognition of such a standard would "trivialize the First Amendment." *Thaddeus*, 175 F.3d at 398–99 (quoting *Bart*, 677 F.2d at 625). As Plaintiff alleges only minor verbal harassment by Defendants Ofstad and Hubble, the Court will dismiss Plaintiff's First Amendment retaliation claims against them.

### B.   Interference with Access to the Court

Plaintiff claims that Defendants "willfully and intentionally interfered with, frustrated and impeded on Plaintiff['s] . . . constitutional right to property litigate his criminal appeal [and] to

9

adequately assist his retained lawyer . . .", in violation of Plaintiff's constitutional rights. (ECF No. 1, PageID.13.) Presumably, Plaintiff refers to the actions by Defendants Beck and Demers—allegedly ordered by Defendant Mann—to "trash" Plaintiff's cell and destroy Plaintiff's legal papers, (*id.*, PageID.9–11), claiming that Defendants' actions hindered Plaintiff's ability to assist his attorney with a motion for relief from judgment, (*id.*, PageID.13).[2]

It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prison officials have a two-fold duty to protect a prisoner's right of access to the courts. *McFarland v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995). First, they must provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in particular criminal and habeas corpus cases, as well as other civil rights actions relating to the prisoner's incarceration. *Id.* (citing *Bounds*, 430 U.S. at 824–28). Second, the right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility to the courts. *Id.* (citing *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)); *see also Bounds*, 430 U.S. at 822 (citing *Ex parte Hull*, 312 U.S. 546, 549 (1941)).

However, as Plaintiff was previously instructed in connection with *Hubbard v. Mann*, No. 2:21-cv-55, 2021 WL 2845099 (W.D. Mich. July 8, 2021), Plaintiff's constitutional right to legal resources and materials is not without limit. *Id*. at *5. As previously explained, to state a

---

[2] Plaintiff's decision to include Defendants Ostad and Demers in this claim is again unclear as there is no allegation that Defendants Ostad or Demers played any role in the destruction of Plaintiff's property, and Plaintiff's green duffle bag had been returned prior to Plaintiff's interactions with these Defendants. At most, Plaintiff claims a mere failure to act after the fact, which, as discussed herein, cannot be said to have caused any violation of Plaintiff's constitutional rights.

viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Id.* (citing *Lewis v. Casey*, 518 U.S. 343, 349 (1996)); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. It is Plaintiff's burden to "plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, Plaintiff's efforts to pursue a nonfrivolous legal claim. *Id.* (citing *Lewis*, 518 U.S. at 351–53; *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996)).

> In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

*Id.*

Here, as in Plaintiff's prior lawsuit, Plaintiff does not set forth the nature of the claims raised in his motion for relief from judgment, the way(s) in which Plaintiff was unable to "properly litigate his criminal appeal" or how Plaintiff was unable to "adequately assist his retained lawyer"; Plaintiff does not describe what additional information that he had but his attorney did not, or that Plaintiff suffered any actual injury because he could not assist his criminal defense attorney in preparing the post-judgment motion. *Id.* at *6. Indeed, Plaintiff acknowledges that he was represented by counsel. "[T]here are no allegations to suggest that in the absence of Plaintiff's assistance his criminal defense attorney could not or did not file the motion." *Id.* (citing *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 104 (6th Cir. 1991) (citing *Holt v. Pitts*, 702 F.2d 639, 640 (6th Cir. 1983)) (noting that once counsel is appointed, the state has fulfilled constitutional obligation to provide full access to courts). Consequently, Plaintiff has failed to state a claim for interference with his right to access the courts in violation of his First Amendment rights.

11

### C. Eighth Amendment Cruel and Unusual Punishment

Plaintiff generally claims that Defendants violated Plaintiff's rights secured by the Eighth Amendment. (ECF No. 1, PageID.13.) He also specifically claims that Defendants Mann, Beck, and Demers subjected Plaintiff "to cruel and unusual punishment by shaking down Plaintiff's cell and blatantly destroying Plaintiff'[s] personal property and maliciously destroying Plaintiff's [legal materials] with extreme[] prejudice." (*Id.*, PageID.14.)

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

Generally, a failure to protect a prisoner's personal property does not state an Eighth Amendment claim. *Hunter v. Sherman,* 48 F. App'x 611, 612 (6th Cir. 2002). Though Plaintiff describes that his cell was "trash[ed]" and his legal papers strewn about the cell, there is no

12

indication that Defendants' conduct deprived Plaintiff of the minimum civilized measure of life's necessities, or implicated Plaintiff's health or safety. *See Helling v. McKinney*, 509 U.S. 25, 35 (1993). Consequently, Plaintiff's allegations do not rise to the level of an Eighth Amendment violation.

### D. Fourteenth Amendment

Plaintiff specifically alleges that Defendant Mann violated Plaintiff's right to substantive due process in ordering Defendants Beck and Demers to "destroy [Plaintiff's] personal property and legal work/books." (ECF No. 1, PageID.14.) Viewed indulgently, the Court construes Plaintiff's complaint to also raise Fourteenth Amendment procedural due process claims related to the destruction of Plaintiff's property.

#### 1. Substantive Due Process

"Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). However, "[w]here a particular [a]mendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that [a]mendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing such a claim." *Albright v. Oliver*, 510 U.S. 266, 266 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens, and the Eighth Amendment provides the standard for such searches of prisoners). If such an amendment exists, the substantive due process claim is properly dismissed. *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).

Here, as discussed above, the First Amendment provides an explicit source of constitutional protection to Plaintiff concerning his claims of a retaliatory shakedown and property destruction. Accordingly, the Court will dismiss Plaintiff's substantive due process claim.

### 2. Procedural Due Process

The Court has also liberally construed Plaintiff's complaint to assert a Fourteenth Amendment procedural due process claim for deprivation of property against Defendants Mann, Beck, and Demers. Any such claim, however, is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. *Id.* at 541. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Id.* at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson*, 468 U.S. at 530–36. Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state or any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480.

14

Plaintiff does not allege any reason why a state court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's procedural due process claim regarding the deprivation of his property will be dismissed.

### E. Conspiracy

Plaintiff alleges that Defendants Mann, Beck, and Demers conspired to violate Plaintiff's constitutional rights. (ECF No. 1, PageID.14.) A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Without reaching the merits, Plaintiff's conspiracy claim is barred by the intracorporate conspiracy doctrine. The intracorporate conspiracy doctrine states that "if all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy." *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Ed.*, 926 F.2d 505, 510 (6th Cir. 1991). Initially applied to claims under 42 U.S.C. § 1985(3), *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839–-40 (6th Cir. 1994) (quoting *Hull*, 926 F.2d at 510), the Sixth Circuit has concluded

that the intracorporate conspiracy doctrine applies to claims under § 1983 as well, *Jackson v. City of Cleveland*, 925 F.3d 793, 817–19 (6th Cir. 2019). As a result, unless members of the same collective entity (such as the MDOC) are acting outside the scope of their employment, they are deemed to be one collective entity and not capable of conspiring. *Id.* at 819; *see also Novak v. City of Parma*, 932 F.3d 421, 436–37 (6th Cir. 2019) (same).

Here, all Defendants are members of the same collective entity (the MDOC) who work at the same divisional location. Plaintiff does not allege, much less show, that Defendants were acting outside the scope of their employments. The "scope of employment" limitation "recognizes a distinction between collaborative acts done in pursuit of an employer's business and private acts done by persons who happen to work at the same place." *Johnson*, 40 F.3d at 840. To bring claims outside of the intracorporate conspiracy doctrine, a plaintiff must allege that the defendants "acted other than in the normal course of their corporate duties." *Id.*

Plaintiff alleges no facts suggesting that Defendants were acting outside the course of their duties, however improperly he believes they may have been exercising those duties. He instead alleges that Defendants Mann, Beck, and Demers used the authority granted to them *through their employment* to cause Plaintiff harm. This does not establish the exception to the intracorporate conspiracy doctrine for actions taken outside the scope of employment. As a consequence, Plaintiff's conspiracy claim under § 1983 is barred under the intracorporate conspiracy doctrine.

### F.  Official Capacity Claims

Finally, although Plaintiff indicates that each Defendant is named in the Defendant's "personal capacity" (ECF No. 1, PageID.2), in his prayer for relief, Plaintiff also requests relief against Defendants in their official capacities (ECF No. 1, PageID.15). The Court will dismiss any such "official capacity" claims.

Official-capacity lawsuits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell*, 436 U.S. at 690, n. 55). An official-capacity suit is to be treated as a suit against the entity itself. *Id*. at 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)); s*ee also Matthew v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). "Individuals sued in their official capacities stand in the shoes of the entity they represent," and the suit is not against the official personally. *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003); *Graham*, 473 U.S. at 165–66. Accordingly, claims against each Defendant employed by the MDOC are treated as claims against the MDOC itself.

Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).

Sovereign immunity extends not only to the State itself, but also to "state instrumentalities," which includes the MDOC. *McCoy v. Michigan*, 369 F. App'x 646, 653 (6th Cir. 2010) (citing *Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *Turnboe v. Stegall*, 234 F.3d 1270 (6th Cir. 2000)). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy*, 369 F. App'x at 653–54.

Here, Plaintiff seeks monetary damages, as well as a declaratory judgment, declaring that the "acts and malfeasance omissions of the defendant[s] have indubitably [violated] Plaintiff's rights." (ECF No. 1, PageID.15 (alterations in original; emphasis removed).) An official capacity defendant is absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). Plaintiff also does not request injunctive or declaratory relief that is prospective in nature, such that relief against an official capacity defendant would be available pursuant to *Ex Parte Young*, 209 U.S. 123, 159–60 (1908).[3] Therefore, Plaintiff's official capacity claims are properly dismissed on grounds of immunity.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Ofstad and Hubble will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's claims for interference with his access to the courts, violations of his Eighth and Fourteenth Amendment rights, and conspiracy, and all official capacity claims. Plaintiff's claims for First Amendment retaliation against Defendants Mann, Beck, and Demers remain in the case.

An order consistent with this opinion will be entered.

Dated: December 15, 2022

/s/ *Maarten Vermaat*
Maarten Vermaat
United States Magistrate Judge

---

[3] Even if Plaintiff had requested prospective relief, Plaintiff has since been transferred to a different facility and is no longer housed with Defendants. Accordingly, any claim for prospective relief would be moot. *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Howard v. Heffron*, No. 89-1195, 1989 WL 107732 (6th Cir. Sept. 20, 1989); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991).